■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARVIN WALKER, Appellant, v RONALD MOSCICKI, as Superintendent of Lakeview Correctional Facility, Respondent. [677 NYS2d 832] —Judgment unanimously affirmed without costs. Memorandum: Petitioner commenced this CPLR article 70 proceeding for a writ of habeas corpus, contending that his imprisonment violates his right to due process under the US and NY Constitutions. He contends that New York waived jurisdiction over him upon its failure to extradite him from Texas in 1990 and based upon the delay of almost eight years in the execution of his sentence.

It is undisputed that petitioner was arrested on March 29, 1989 on drug charges and that his trial commenced in Queens County Supreme Court in October 1989. On October 30, 1989, petitioner failed to appear in court during his ongoing trial, and a bench warrant was issued for his arrest. On November 3, 1989, petitioner was convicted in absentia of criminal sale of a controlled substance in the third degree (Penal Law § 220.39) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16). On December 11, 1989, petitioner was sentenced in absentia to concurrent indeterminate terms of imprisonment of 3 to 9 years.

On October 6, 1990, petitioner was taken into custody in Texas by the Houston Police Department upon his return to the United States from a location abroad and held on the basis

of the New York warrant. On October 9, 1990, the Harris County Sheriff's Department released petitioner from custody after receiving a teletype from an operator employed at the New York City Police Department's Central Warrants Unit (CWU), allegedly stating that New York declined to extradite petitioner. Although the teletype is no longer available because the 1990 records in Texas were routinely destroyed after the passage of time, a computer summary maintained by the Justice Information Management System in Texas reflects that the hold on petitioner was released on October 9, 1990.

Neither the Queens County District Attorney (District Attorney) nor the CWU has any records indicating that either office declined to take custody of petitioner from or were contacted by Texas authorities. The CWU in the ordinary course of business updates its Warrant On-Line File System (WOLF System) to show what teletypes are transmitted to other jurisdictions and whether New York declined to take custody of an individual pursuant to an outstanding warrant. Petitioner's record in the WOLF System reflects no communication with Texas authorities. It is the practice of the CWU, upon being notified that an individual is being held in another jurisdiction upon a New York warrant, to confirm the existence of the warrant and then to contact the appropriate District Attorney's office by facsimile and telephone. The unvarying policy of the CWU is to contact the District Attorney's office before sending a communication to out-of-State authorities approving or declining extradition. The practice of the CWU is to remove outstanding warrants from the National Crime Information Center (NCIC) computer system once extradition on those warrants has been declined.

Shortly after Texas released him, petitioner moved to Florida, where he married, bought a house, earned an A.S. degree in computer technology, obtained employment and became a church member. In 1994, petitioner was arrested on a weapons possession charge, pleaded guilty and was sentenced to probation.

On May 23, 1997, the District Attorney learned from Florida authorities that petitioner was at liberty in that State. The District Attorney, through CWU, informed Florida authorities of the intent to extradite. On June 8, 1997, Florida police arrested petitioner upon the 1989 bench warrant. Petitioner waived extradition and was returned to New York on June 19, 1997 for the execution of his sentence. After incarceration, petitioner commenced this proceeding.

Supreme Court properly dismissed the petition. An excessive

delay in the execution of a defendant's sentence may, under certain circumstances, violate a defendant's due process rights and result in the State's waiver of jurisdiction over defendant (*see, e.g., Shields v Beto*, 370 F2d 1003). In order to establish such waiver, however, "it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in the aftermath of such action or inaction" (*Piper v Estelle*, 485 F2d 245, 246).

Due process rights are not denied where petitioner himself is responsible for the delay in the execution of sentence (*see, Mobley v Dugger*, 823 F2d 1495, 1497). Where "the delay in the execution of the sentence can be ascribed to the petitioner's own conduct, the period of delay is excusable and does not require the petitioner's discharge", even where the People contributed to the delay by making less than diligent efforts to apprehend the petitioner (*People ex rel. Dinitz v Hunter*, 130 AD2d 533, 534-535).

The Attorney-General concedes that available Texas records establish that Texas authorities released petitioner after three days based on a teletype from a CWU operator that New York would not extradite petitioner. It is undisputed, however, that neither the District Attorney nor the CWU has any records showing that they were contacted by Texas authorities or that they declined to take custody of petitioner. As noted, the CWU updates a fugitive's record in its WOLF System to show that teletypes were transmitted to other jurisdictions and that New York declined to take custody of a fugitive, but petitioner's record in the WOLF System reflects that CWU had no communication with Texas authorities. Further, although the CWU removes outstanding warrants from the NCIC system once extradition on those warrants has been declined, the 1989 bench warrant remained outstanding until petitioner was apprehended in Florida. It thus appears from the record that the teletype sent from the CWU operator to Texas authorities was "little more than an administrative mistake" (*Piper v Estelle, supra*, at 246) or a " 'bureaucratic cross-up' " (*Townzen v Craven*, 444 F2d 315, 316) rather than an affirmative wrong or gross negligence by the State (*see, Piper v Estelle, supra*, at 246). The cases cited by petitioner are distinguishable and do not support his position.

Petitioner must shoulder the responsibility for the delay in

executing his sentence because he willfully fled the State during the trial and, except for three days in 1990, his whereabouts remained unknown to New York officials during the nearly eight-year period of delay. Although the People may have contributed to the delay, "it was only the petitioner's willful failure to appear in court that prevented his sentence from being executed on the scheduled date" (*People ex rel. Dinitz v Hunter, supra*, at 534). Under the circumstances, New York's actions in carrying out the execution of petitioner's sentence were not so "affirmatively wrong" or "grossly negligent" that they violated petitioner's due process rights (*Piper v Estelle, supra*, at 246). (Appeal from Judgment of Supreme Court, Chautauqua County, Ward, J.—Habeas Corpus.) Present—Lawton, J. P., Wisner, Callahan, Boehm and Fallon, JJ.